Inselberg Data Corporation v. Inselberg 162677 First Data Corporation v. Inselberg William Adams for Appellant's First Data and Frank Visignano These cases began when appellants filed a declaratory judgment action in federal court seeking a declaration of non-infringement after Inselberg asserted for over a year that they were infringing patents that Inselberg reported to own. This is a classic circumstance in which declaratory relief is appropriate, but the district court dismissed the complaint as well as First Data's declaratory judgment counterclaims in an dismissal. This was error. But even if we accept all of your propositions, and we'll get back to these later, how is there really a case or controversy here when they don't claim ownership? They don't say that they could sue you today. At the time of the complaint, which is the operative time here, and at the time of the complaint, for example, at pages A879 to A971, they presented a claim chart alleging infringement of the 975 patent. They identified First Data as an infringing party in correspondence with counsel. They were threatening a suit. But didn't they say that that was contingent on them nullifying these assignments? But at the same time they were making these threats of patent infringement, they were also saying that the assignment was void ab initio. They repeatedly referred to the assignment as invalid, null and void, void ab initio. But they knew they had to prove that, right? They knew they had to prove that. But Jim Arnold, we disagree, we don't think Jim Arnold correctly creates ownership as a jurisdictional issue. But if you accept even the test, you take away the label, you accept the test that's in Jim Arnold, Jim Arnold has an exception. And that exception is at 109F3rd at 1577, which says an assignor, not an assignee, an assignor may bring an infringement suit where the assignment may be declared null and void by operation of law. Now that's distinct from a claim or an assertion that an assignment is voidable and therefore needs to be equitably rescinded. There's a distinction between void, that's what the Jim Arnold exception is talking about, and voidable. And what my friends on the other side claimed in the lead up to us filing our declaratory judgment action, and even when they filed their subsequent state court claim, they claimed that the assignment agreement, and the assignment which is incorporated therein, was invalid, null and void, void ab initio, and therefore at A642, alleged that Inselberg retained an interest in the patents at all times since the assignment. They always confuse the language between void and voidable. But they knew they had to go to state court. I don't think there's any mistake, respectfully, Your Honor, with respect to void and voidable because their argument is that the reason the contract, the assignment, is void is because there was a lack of consideration, that the contract was impermissibly indefinite. And if that was correct, that means there was no contract, there was no contract of assignment. And at that point, that's something Jim Arnold recognizes can be litigated in the same context of a patent infringement claim. But the threat still to you was contingent because they said that they recognized that they would have to ultimately void this thing first. I mean, I had a death threat from a litigant once, and he threatened to kill me after he was elected president. And so the marshal said, well, I don't have to protect you because it's not a real threat because it's contingent upon something else happening. Certainly, they want a declaration that is void ab initio. But that declaration wouldn't change. That would just be a judicial recognition that the assignment was void from the beginning, that it never existed. Void ab initio means it did not come into existence. It was not a meeting of the minds, or there was a contract that was improper for want of consideration, as they've expressly argued. This is their pleading. This is not only what they said to us in the lead-up to our filing a declaratory judgment action. That's what they've said in their pleadings. So in your argument, it would depend on what the contingency is, how it is that they're going to show that they're the patent owner. Say they weren't arguing that it was void. They had some other argument for why it was that they had patent ownership. You would have this court delve into what that state law claim is for patent ownership first and see what kind of argument it is. And if it's null and void, then we consider the whole case. And if it's not, then we don't. I think that's what the framework that Jim Arnold sets out. But it's making the distinction between null and void. Void is a matter of law by operation of law versus voidable. What about under ARBAW? ARBAW. So let's step back. Because I think, obviously, Jim Arnold precedes ARBAW. And ARBAW changes the landscape here. Because ARBAW makes clear that Congress must have had a clear statement before a limitation in a statute becomes jurisdictional. And so in Jim Arnold, Jim Arnold treated ownership as a jurisdictional requirement. But ARBAW has a clear statement rule. And so does subsequent decisions in Reed by the Supreme Court, which also interpreted 1338 as a jurisdictional statute that's at issue here. And then in Lightcubes, this court applied Reed to say that the Territorial Act requirement in the PADD Act was not jurisdictional. But ARBAW itself even has an exception. And the exception seems to read almost like the language in Jim Arnold, which talks about where something is wholly insubstantial and frivolous, which is the exact language that was actually used in Jim Arnold, even though it preceded ARBAW. ARBAW has that exception, doesn't it? Certainly. If there is. So as a general matter, you cannot have a frivolous. You cannot have a rising under jurisdiction based upon a frivolous, non-colorable, purported federal cause of action. That's absolutely correct. But here it's certainly colorable that there would have been ownership because under Jim Arnold, as we just discussed, if the assignment is null and void, then that would give rise to patent ownership and to a claim. I still don't even understand why we're here. I mean, they say, they concede that they don't have ownership right now, that they have to have the state court grant them that ownership before they could ever bring an infringement action. So why do you want a DEC action if you can fight them on that ownership claim? We can fight them on that ownership claim, but we have to go back. They said that we were improper at the time that we brought this case into federal court and removed it to federal court and have threatened to sanction us for that basis. And we think that perhaps maybe if they're walking away from their prior theories, maybe they'd be entitled to summary judgment. But we're on the pleadings here. And the pleadings at the time that we filed the complaint and removed the state court action to federal court, they were arguing, and I think it's still frankly in their complaint now, that it is null and void and invalid. So are you saying that there's 285 of Rule 11 sanctions hanging over your head? They filed in the federal district court, they filed a motion for 285, and I'm not sure if it's 285, I think it was section 1927, because I take the view that it's not a patent case, so it wouldn't be 285. It's 1927 and inherent authority sanctions, which the district court has held in abeyance pending the results of this appeal. And so that to us, I mean, obviously subsequent events could change whether we're entitled to relief on our claims, but as properly pled based upon general model, we think we are entitled to declaratory judgment action given their year plus worth of threats that we were infringing their patents to the tune of hundreds of millions of dollars of damages. And the facts might not support us, we might lose on the merits, but at the pleading stage, we're entitled to proceed. I'd also like to talk about an alternative argument, alternative ground that the other side has raised. I think Arbol resolves whether ownership is actually jurisdictional or not, but the other side has raised Article III standing, and admittedly this court on several occasions has talked about ownership or whether one's a patentee under the Patent Act in standing terms. And I think sometimes the court might have actually been speaking in terms of statutory standing, which is the equivalent of whether something's an element of the offense, and not necessarily Article III standing. But even if we were to accept that ownership or the patentee status does implicate Article III standing, the Supreme Court in Lujan was very clear that you need not prove your standing at the outset. It's just like any other element of proof. At the pleading stage, you can rely on, this is Lujan at 504 U.S. at 561, general factual allegations of standing. That's okay. It must be accepted as true. Once you get to the summary judgment stage, you have to show facts that support your claim to standing, and once you get a judgment, you have to prove that you have standing. So even if my friends on the other side were correct that patentee and ownership concepts implicate Article III standing, we've done sufficient here because we showed that the other side could have brought their own patent infringement claim because of their allegations that it was null and void. Clearly, the court could have dismissed under 12b-6 because they didn't state that they have ownership of the patent, right? So you're just saying because the court went under 12b-2, we should reverse even though it's so obvious that they would have to be dismissed anyway? Respectfully, I disagree, Your Honor, because however you label the ownership issue, whether it's jurisdictional, whether it's an element of a claim or statutory standing, or whether it's an Article III issue, all you have to do at the pleading stage is to have a plausible basis for ownership. It doesn't require proof of ownership, and in the lead-up to our complaint and ultimately in their state-filed complaint, they allege that the assignment is invalid, null and void, void admonitio, which would have allowed them under Jim Arnold to bring in their own infringement claim. And because they could do that, we were entitled to bring our anticipatory declaratory judgment action. Otherwise, there's no forum. Obviously, you can't take these claims to state court. You can't take the patent declaratory judgment claim to state court because 1338 deprives state court of jurisdiction. So there would be nowhere to vindicate these rights at the outset. If I can turn, last before I—to the remanded claims. So everything we've been talking about are claims that my clients filed, either initially in federal court or— Well, can we really review that? I mean, I know you've tried to argue that we can, but even if we thought the court's jurisdictional decision was wrong, wrong on its face, we still can't review it, right? If, in fact, it was a jurisdictional decision. That's correct, Your Honor, but— The court said it was based on jurisdiction. The court said that it was remanding under 1447C. But it also says in footnote 12 on page 22 of the appendix that it's declined exercise jurisdiction or supplemental jurisdiction under 1367C. Right, but he also said one of the reasons he wouldn't do that is because he didn't have any jurisdiction over the primary claim. Well, for him to have exercised any discretion or discretionary— to have any discretion to exercise under 1367C, there has to be some sort of claim within the federal court's original jurisdiction. Supplemental jurisdiction wouldn't even apply. If you don't have any original jurisdiction claims, there's nothing for supplemental jurisdiction to attach. So I think there's some inconsistency in his opinion. I don't think it's as clear perhaps as it could be. But this court, once you look at that footnote and once you determine that, in fact, the dismissal of our claims weren't based on subject matter jurisdiction grounds because ownership is not an issue of subject matter jurisdiction. It's an element of the claim. Once you recognize that, then it makes sense that why he declined to exercise supplemental jurisdiction. He wasn't kicking it—he might have cited 1467C, but he wasn't kicking it back to state court because of a lack of jurisdiction. He was simply declining to exercise supplemental jurisdiction. I'll reserve the balance of my time if there are no further questions. Okay. Thank you. Mr. Adams? Mr. Brook? Thank you, Judge Newman, and may it please the court. This is a little bit of a confusing situation for a lot of the reasons that already came up, but at the bottom line, the fact is that there is no threat of an infringement claim that is currently hanging over the head of First Data like the Sword of Damocles because there is no present ownership of any patents by my clients. Well, you did say to them before they filed exactly what you said in your state court pleading, which is that the assignment was void ab initio. The words void ab initio were, I think, incorrectly used by me in a letter before a draft complaint was ever sent, back before even researching case law, before citing the Uniform Commercial Code, while there were concerns about a lot of things, and before finding the Jim Arnold decision as well. But in the next round of communications and the thing that's been put into the record by First Data, which is a draft complaint, it explicitly cites to Jim Arnold twice, saying this patent infringement claim is asserted conditioned upon first getting ownership of the patents because at the time of the, again, this is settlement talks. This is not a filing in court yet. You know, there's things like race judicata you've got to think about because the issue of infringement had been raised. There was concerns that maybe if we don't put in a complaint, we would never be able to raise it again later if and when my clients get titled back to the patents. So let's say that the state court decides who owns the patent. Then you have to go back to federal court, right, to decide the patent issues. If we succeed. If not, I'm pretty sure that the CEO of First Data is not. Exactly. I've never seen such a bifurcation of the separation of a threshold question, even of ownership, whereby if, in fact, the owner is established, you then you have to go to the state court, the ownership, then you go back to the federal on the patent claim. Here we are in the federal court with all of the issues together. I completely understand and agree. And I think that that's because in most patent cases, I think all the patent cases except for Jim Arnold and its progeny, the party that's claiming patent infringement has at least asserted a claim of current ownership. We've seen enough of those where the question was, was this validly assigned or invalidly or anything else to then separate it and go back and forth between these jurisdictions is something that I think is contrary to all of the premises of the processes of law when there's a federal question. Well, the thing is we actually don't say that the assignment was not effective. In fact, one thing that I think has been overlooked here is that the claims that are asserted by my clients in their complaint actually require that the assignment was effective because it's alleged that Frank Bisignano, the CEO of First Data, who was a personal friend of my client's, mismanaged the patents by, among other things, not enforcing them. The reason why the issue of First Data potentially infringing was first brought to his attention was not as a threat but as an opportunity to monetize the patents. And this complaint seeks to enforce the patent? The complaint that was filed by my clients does not seek to enforce the patent in any way, shape, or form. That much is clear. And I think that there's a very realistic chance that if my clients get title to the patent back so that they could enforce it, they may not actually decide to go after First Data at the end of the day. One of the main reasons being that after that first draft complaint was issued, First Data's general counsel shoots me a copy of a license agreement between First Data and Frank Bisignano showing that First Data is licensed to use the patents. Well, we can't sue someone for infringement, at least not in good faith in my understanding of things, when they're licensed to use it. So that's where the claims morphed, and we focused more on the uniform commercial code that's applicable here for reasons that are somewhat immaterial because the allegation is that there was mismanagement of property that was taken into possession as collateral for a loan. And so those mismanagement claims depend on the fact that Frank Bisignano and Frank Bisignano alone had complete dominion and control over the patents. And that was true before we filed the claim and when we filed the claim.  That's a claim we've made. That would not exist if my clients had the ability to enforce the patents themselves. The claims that have been made only work because my clients do not own the patents. That's why there is no sort of strategy involved here in terms of trying to claim that we don't own it when we really think that we do. My clients do not have title. If your honors go to the Google... So you couldn't sue anyone for patent infringement right now? Absolutely no. That's correct. The first thing that is required to have standing to get a patent infringement claim made is enforceable title to it, at least a colorable allegation. Well, what about Arbaugh? I mean, you know, there's lots of overlays here, but the trial court did dismiss under 12b-2. So it's subject matter jurisdiction. Correct. And Arbaugh seems to say, you know, courts and parties historically are misunderstanding jurisdictional elements, jurisdictional concepts, and confusing jurisdictional concepts with elements of a claim, prerequisite elements of a claim. So why doesn't Arbaugh tell us that Jim Arnold went too far to characterize this as a jurisdictional question? Well, I think for the reason that Your Honor went into earlier, you quoted footnote 10, I believe, of the Arbaugh decision where it made the point that was made in Jim Arnold, which is that if there's not even a colorable claim, essentially, that there is standing to sue, a federal right that has been implicated, then it's not an issue of, as in Arbaugh, where there's a jurisdictional element. This isn't a jurisdictional element, but to have a rising under jurisdiction, the well-pleaded complaint rule is what governs that. And under the well-pleaded complaint rule, the basis for a claim and a federal right has to appear. That's what Jim Arnold was basing it on. Okay, so here's the problem. The well-pleaded complaint rule in this case applies to the DEC action. So the DEC action says I've been threatened with an infringement suit and I've been told that what I thought was my assignment, my right under these patents doesn't really exist. So why isn't that well-pleaded complaint enough to arise under the Declaratory Judgment Act? Because that same well-pleaded complaint affirmatively alleges that ownership belongs to someone other than the parties who's being sued. That's one of the things that's sort of crazy about this case is because they're affirmatively alleging ownership belongs to Frank Bisognano, not to my clients. And so they are essentially trying to money the waters by trying to say, well, decide all of this at once, even though what they're really asking for is what Judge McNulty characterized as a contingent declaratory judgment. Don't declare the patents invalid necessarily, but if you find that they own the patents and not our CEO, then declare them invalid. Otherwise, it's this sort of bizarro world of a party asking a court to invalidate his own patents, which is effectively what's sort of happening here in order to try to make what's really a non-ripe claim for patent infringement or non-infringement a basis to get into federal court. And to be clear, if there's a basis to be in federal court, my clients would be happy to be in federal court. Well, is ripeness a jurisdictional question? It's part of Article III standing, and that's fundamentally what undergirds a lot of what Judge McNulty's decision is about, even though he framed it in terms of statutory standing. Because in the context of this element, of ownership of a patent, it is fundamentally different from those issues in Arbaugh and in the Reid case in 2010, because it actually goes to whether there's a federal right at all. Didn't the judge, though, say that he wasn't going to address Article III standing? I mean, he said that explicitly. He said he would use the framework for statutory standing rather than Article III, but the thing is, he also said in the last footnote or so of his opinion, that if he were to try to decide these state law claims now, or to decide the federal claims before addressing the ownership issue and the ownership issue gets addressed, he'd be issuing an advisory opinion. And that kind of language indicates and implicates Article III necessarily. That is the concern, because the thing is here, with our clients surely not able to file a patent infringement claim now or any time before intervening judicial action vests them with title. Did he say the advisory opinion related to ownership or related to infringement? I'm not sure I can recall exactly. Why don't I just look at this here? Unless state law issues, this is page, appendix 22, footnote 13, bottom of that paragraph on page 22. Unless the state law issues were disposed of, this court would find itself in the position of rendering an impermissible advisory opinion as to the patent issues. But he didn't say if he had decided ownership that that would be advisory? No, the ownership would not be advisory. And so if let's say ownership is decided in favor of this plaintiff, that ends it, right? That ends the question as to whether the case is properly in federal court. Is it not? The only reason I hesitate to answer is because of the two cases. I'm not sure which plaintiff Your Honor is referring to. If the ownership issue is decided in favor of Bisignano, the first data CEO, then that's it. So if that happens, any decision on the issues of invalidity or infringement would have been purely advisory. Well, yes, so the question before us is whether the district court can make that decision. Right. On the understanding that if we now again return it to the state court and the decision is made as to who the owner is, then the patent issue goes back to the district court, right? Potentially. I think that there's still issues under Medtronic, or is it Medimmune, about whether at that point there would really be any threat of an impending lawsuit. Let's say the threat continues. That would be something, of course, to be argued as to whether there's a threat. The question is before whom does it get argued? Well, at that point in time, if this complaint had an allegation that our clients owned enforceable title to the patents, we wouldn't be here. The problem is that if the declaratory judgment complaint and the counterclaims as well allege exactly the opposite and then attempt to say that my clients argue that they may have title and they try to rely on this language from Jim Arnold that has been totally dissected and blown out of proportion about when an assignment is operative by operation of law, when title to the patent transfers by operation of law. Well, by operation of law is stuff like probate proceedings. Two people have ownership of a patent. Again, I apologize if I'm not going to get this right. I'm not a patent attorney per se. But I believe two people can own a patent and there may be state law issues that govern what happens when one of them dies. So operation of law might give one person who didn't have authority to file a patent infringement claim that authority. And you don't have to wait for a court to intervene to get jurisdiction over that. But the issue in Jim Arnold is really about... Why not? You'd have to decide the threshold question. Assuming that the threshold question has to be asked. The question is not how to decide the question but who decides it when you have a complaint or a declaratory statement that plainly arises under the patent statute. Yes, Your Honor. And that's precisely what the Jim Arnold case has held and has been reaffirmed on multiple occasions is that when the allegation of ownership is on the face of the complaint expressly contingent upon an intervening judicial action, regardless of which judge does it, if judicial action is required before title is held, then there is no federal question jurisdiction because applying the well-pleaded complaint rule to it, there is not an allegation of current ownership that appears and that is a necessary element for a patent infringement claim and for standing. So that's why when a complaint explicitly says that we don't have title but we want to get title, it falls within the Jim Arnold rule. And that's what Jim Arnold has held, has to be decided by either a state court or if there's another basis for federal jurisdiction, another federal court. And I believe it was the Nolan case in 2012, this court applied Jim Arnold again to transfer a case to the Fifth Circuit. So it goes to the fundamental issue of whether there is a claim arising under the patent laws. What's the status of the state court litigation? The status of the state court litigation is one of the many reasons why we would be happy to be in federal court if it wasn't for our concern that there is just, we don't want to litigate for years and have a vacated judgment. But the state court rendered a decision where he did not, the judge assigned to it, did not dismiss any claims, but he did make some rulings about the nature of things and fundamentally it favored the appellants in this case by saying that basically we're going to have to appeal that decision before we can possibly get ownership or get reconsideration down the line somehow, which may not happen. So it's even more contingent now than it was before that my clients will be able to bring a patent infringement claim. And that, coming back to the practicalities of this, which I think certainly undergirded some of what we argued to Judge McNulty and Judge McNulty's decision here, is it makes no sense to require a party who does not yet own a patent to go into full-blown patent litigation, which is extremely expensive, and they don't have necessarily the concrete interests that you need. That's one of the things that is really a reason why Article III does come into play here because it's so contingent. Can I just go back for a minute to the idea that the district court did not address Article III, just because your reference to the other footnote. I just wanted to point out the footnote 10 on appendix page 20. Now there, the court says specifically that it's not considering standing in Article III because there's a clear marked path through statutory jurisdiction. I just want to make sure that you agree with that, right? I do, and I think that, again, a decision can be affirmed on any basis, even one that the district court did not use. And certainly here we had argued below that this was a matter of standing and Article III jurisdiction. But did you argue that on appeal as well? I'm fairly certain that we did. I think that the first lines of our appellee brief basically said that even assuming arguendo, that, I'll just put this right here. What did we say? Basically there's somewhere, I'm fairly sure that we said that there is no federal jurisdiction. We have to consider it anyway. It's something we have to consider. But anyway, it would be more adequate if the brief would be the question. No, certainly I can understand that. But I think that we did, we certainly did argue that Article III jurisdiction is missing here because even if the element as a statutory matter is not a jurisdictional element, it always needs to be standing. And without ownership, there is no right that could be at issue here. There's no injury to that. It's precisely because there is no potential benefit to my clients now to litigate patent infringement or validity. That's why it's not ripe, is one way to put it. You could say there's no standing. They don't have it in person. Well, for the risk of repeating ourselves, you're not saying that the district court is prohibited from deciding ownership, are you? I think that in the... Is that your position? That because it's a state question, the district court absolutely cannot decide that question? I think that it's a... If there's a way for that to happen, again, I would like to see that. But I think the answer is that I believe that that's not correct, that the judge cannot decide on state law claims in the absence of a federal basis for jurisdiction and that under Jim Arnold, where a complaint does not allege that the party being, you know, the party either asserting an infringement claim or, in this case, being the target of a declaration for non-infringement claim, that that party has the basis to bring an infringement claim sometime soon, that that missing element means that there's no well-pleaded complaint because... The answer to my question is no, the district court cannot decide the question of ownership. Is that right? I believe that is correct. That's your answer? Yes. Okay, thank you. Any questions for Mr. Brooke? Anything else? Thank you, Mr. Brooke. Okay, Mr. Adams. Just a few points, Your Honor. Judge Newman, I think you're absolutely correct. This court very often has claims, entertains infringement claims where there's disputes as to ownership. They don't bifurcate, have this two-court, two-step process. And in fact, Judge Stoll, in your recent decision in Reardon, you recognized that an infringement claim is a compulsory counterclaim in a declaratory judgment action regarding ownership. Recognizing the factual overlap, factual disputes as to ownership overlap and makes it such that an infringement claim in that context is compulsory. That was assuming that there was federal jurisdiction over the declaratory judgment action. That's correct. They would have to... Supplemental jurisdiction as to declaratory judgment action because the patent infringement claim would have provided original jurisdiction, whether it's a counterclaim or not. The disputes over infringement and ownership are commonly litigated in infringement disputes. I think Jim Arnold is actually very clear, notwithstanding my friend's statements, that his clients could have sued, could have brought an infringement claim, and therefore that allowed us to... When you say that's very clear, we have had cases that talk about what operation of law means. And those cases are, for instance, where someone dies and the will passes the ownership rights automatically by operation of law, for instance. Absolutely, but the rest of the quote is not just by operation of law. It says where the assignment may be declared null and void by operation of law. And where something is passing... I'm not a probate attorney, but I think where something is passing, following death, it's not that the original assignment was null and void, void ab initio, it's just by operation of law. And so I think what Jim Arnold is saying here, we don't have to have this ridiculous two-step process where one side is saying that the assignment, where the assignor is saying that the assignment is null and void. You can go to federal court and vindicate your rights, whether in an infringement action or in an anticipatory declaratory judgment action. Counsel also said that the claim to the assignment being void ab initio was very early on. But the reality is that even if they didn't use the void ab initio words later, even in their state-filed complaint, they referred to the assignment agreement as invalid and null and void. And if I could read from appendix page 642, which is the state-filed complaint, in paragraph 209, they say, this is at the bottom of 642, they allege, even in their state-filed complaint, which comes after we filed our declaratory judgment action, that the absence of a valid and fully formed contract constituting an acceptance of collateral and partial satisfaction of secured loan means that plaintiffs have retained an interest in the patents at all time since they were assigned to Bisignano. So even at the time they filed their state-court complaint, their position was, and it is that they retained an interest in the patents at all times. That's sufficient to bring us within the Jim Arnold language. Turning to standing in Article III issues, I didn't hear any response to my citation to Lujan and how Lujan shows that at the pleading stage, you don't have to prove standing. So even if ownership goes to Article III standing, you don't have to prove ownership at the pleading stage. Under Lujan, this court is required to accept all well-pleaded allegations of standing and certainly putting together their pre-complaint allegations and their allegation in their actual state complaint to which we responded by filing counterclaims shows that they considered the ownership issue to be disputed and they had a culpable claim to ownership. Rightness is in the same box. And just to close, I understand these facts are unusual. It's a complicated back and forth. But at bottom, we were responding to threats of a patent infringement claim over the course of a year and reasonably went to federal court to vindicate our rights to show that we did not infringe the patents in suit. Do you agree with the characterization of the state court action that right now there's been a determination that the contract was valid, I guess? There has been an interlocutory determination that the assignment is valid, which shows obviously we're not forum shopping here. We have a good result presently in the state court. It's an interlocutory decision, so we don't know where that's going. We didn't dismiss any of our claims. He held that as an interlocutory matter that the assignment is valid under New Jersey law. And the case of proceeding didn't dismiss any of the claims. There's presently discovery going on as to the valuation of the patents, which is an issue we think, frankly, is why this whole case should be in federal court because they're doing evaluation of the patents. But, again, that's all outside the complaint. That's all ex post. We're here because we reasonably went to federal court and certainly think we had a valid federal claim and most certainly think we shouldn't be sanctioned, as they're seeking to do, for having to try to avail ourselves of the federal forum to which we think we're entitled. If there are no further questions, I'll ask you to reverse. Any more questions? Okay, thank you both. The case is taken under submission. That concludes our argued cases for this session. All rise. The Honorable Court is adjourned from day today.